[Civ. No. 62317. Second Dist., Div. Two. Dec. 23, 1981.]

GYOZO SZABO, Plaintiff and Appellant, v.
MEDICAL INFORMATION BUREAU et al., Defendants and
Respondents.

COUNSEL

Lee Grant and Harold Greenberg for Plaintiff and Appellant.

Allen M. Katz and Munger, Tolles & Rickershauser for Defendants and Respondents.

OPINION

**OLSON, J.\***—This is an appeal from an order quashing service of summons on a nonresident defendant for lack of personal jurisdiction.

---

\*Assigned by the Chairperson of the Judicial Council.

Plaintiff brought suit against MIB, Inc. (formerly known as Medical Information Bureau), and against several life insurance companies under the Federal Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.). MIB is a nonprofit membership corporation made up of approximately 750 life insurance companies formed to arrange for the interchange of information between member life insurance companies. MIB's principal office is located in Boston, Massachusetts.

Service of process on MIB was purportedly made by mailing a copy of the summons and complaint to its office in Boston. MIB made a special appearance in the trial court and moved to quash service of process on the grounds that it lacked sufficient minimum contacts with the State of California. In support of its motion to quash, MIB filed an affidavit explaining its present and past method of operations and demonstrating the manner in which it does business. The evidence introduced by plaintiff in opposition to the motion was an affidavit by one of plaintiff's attorneys to the effect that 10 years ago he worked for a consulting firm which designed computer programs for several California insurance companies, and, in the course of that employment, he learned that California life insurance companies were using information obtained from MIB as a basis for denying or rating insurance.

The motion to quash was granted and this appeal is from that order.

■ It is well established that in any action by a resident plaintiff against a foreign corporation, the burden is on the plaintiff to show that the foreign corporation has sufficient contacts with California to subject the corporation to personal jurisdiction in California. (*Frederick Fell, Inc.* v. *Superior Court* (1973) 36 Cal.App.3d 93, 95 [111 Cal.Rptr. 219]; *Tiffany Records, Inc.* v. *M. B. Krupp Distributors, Inc.* (1969) 276 Cal.App.2d 610, 621 [81 Cal.Rptr. 320].) ■ On review of an order granting a motion to quash, the facts must be viewed most favorably to the moving party. (*Messerschmidt Development Co.* v. *Crutcher Resources Corp.* (1978) 84 Cal.App.3d 819, 825 [149 Cal.Rptr. 35]; *Belmont Industries, Inc.* v. *Superior Court* (1973) 31 Cal.App.3d 281 [107 Cal.Rptr. 237].)

Code of Civil Procedure section 410.10 provides: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Thus, a California court may exercise jurisdiction over a nonresident defendant only when permitted by the due process clause of the United States Constitution.

(*Martin* v. *Detroit Lions, Inc.* (1973) 32 Cal.App.3d 472, 475 [108 Cal.Rptr. 23].) Three major United States Supreme Court cases deal with the constitutional limits of nonresident service of process. They are *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057]; *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199]; and *Hanson* v. *Denckla* (1958) 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228]. Read together, these cases stand for the proposition that due process requires that a nonresident defendant have certain "minimal contacts" with the forum state before he can be compelled to appear in a suit brought against him in that state.

The California Supreme Court repeated the language from *Hanson* v. *Denckla, supra,* 357 U.S. 235, when it stated in *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 898 [80 Cal.Rptr. 113, 458 P.2d 57]: "Such a defendant's activity must consist of 'an act done or transaction consummated in the forum State' or 'some [other] act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"

■ Having the foregoing legal principles in mind, did MIB have sufficient contacts with the State of California to subject it to personal jurisdiction? We have concluded that it did not.

The causes of action which plaintiff has alleged against MIB do not arise out of or result from any activities of MIB within California. The complaint does not allege that MIB performed any activities in California. It does allege that MIB obtained and disseminated information concerning appellant without authorization from him and without notifying him, but there is no allegation of any particular act by MIB in California. MIB has no offices, property, bank accounts, employees or directors located in California. The only contact it has with California arises from the fact that its members are life insurance companies located throughout the country, including California.

In *Midwest Fur Producers Ass'n* v. *Mutation Mink B. Ass'n* (D.Minn. 1951) 102 F.Supp. 649, a trade association headquartered in Wisconsin was not amenable to suit in Minnesota even though members were located in Minnesota and the association's activities benefited members in Minnesota. In *Elizabeth Hospital, Inc.* v. *Richardson* (W.D.Ark. 1958) 167 F.Supp. 155, affd. 269 F.2d 167 (8th Cir. 1959),

cert. den. (1959) 361 U.S. 884 [4 L.Ed.2d 120, 80 S.Ct. 155], a national medical association headquartered in Illinois was held not amenable to suit in Arkansas even though it had a local member association in that state. In *People* v. *Brotherhood of Painters, etc.* (1916) 218 N.Y. 115 [112 N.E. 752], it was held that an international union organized as an unincorporated association and headquartered in Indiana was not amenable to suit in New York even though a local union which was a member of the international union was located in New York.

It is correct that recent cases have expanded the concepts of personal jurisdiction. However, even where a nonresident corporation sells a product in California which causes injury to a California resident, the courts still look to whether the nonresident defendant "... maintains substantial contacts with a state through a course of regularly established and systematic business activity ..." (*Jeter* v. *Austin Trailer Equipment Co.* (1953) 122 Cal.App.2d 376, 388 [265 P.2d 130].)

Merely causing an effect in the forum state is not sufficient to justify personal jurisdiction. In *World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286 [62 L.Ed.2d 490, 100 S.Ct. 559], the court held that a New York Volkswagen retailer could not be sued in Oklahoma for an accident occurring in Oklahoma which was allegedly caused by a defect in a vehicle which the New York retailer had sold. The notion that the retailer could be sued in Oklahoma because it was "foreseeable" that a car it sold would pass through Oklahoma and cause an accident there was rejected. *World-Wide Volkswagen Corp.* v. *Woodson, supra*, also rejected the notion that personal jurisdiction could be based on the economic benefit to the defendant derived from selling cars, the very purpose of which was to travel, and from the fact that the Volkswagen organization had repair centers throughout the country.

From the evidence before the trial court it appears that MIB did not have sufficient contacts with California such as to comply with the due process requirements of fair play and substantial justice. The contacts it has are all collateral, to wit, the fact that it has as members, insurance companies which do business in the state. These member insurance companies can be compared to the existence of Volkswagen repair centers throughout the country, which was rejected as a basis for jurisdiction in *World-Wide Volkswagen Corp.* v. *Woodson, supra*, 444 U.S. 286.

Appellant urges that the trial court should have taken judicial notice of the so-called Nardi affidavit and that failure to do so was error.

Respondent, in moving to quash service of process, requested that the trial court take notice of various pleadings and declarations from a prior case, referred to as the *Beresh* case. The Nardi affidavit was one of these documents. By written memorandum the appellant objected. The trial court sustained the objection. Appellant never filed his own request for judicial notice of the Nardi affidavit as required by rule 42 of the Los Angeles Superior Court Law and Motion Manual. In oral argument on the motion, the appellant urged that the Nardi affidavit should be considered but the record fails to demonstrate a fair compliance by appellant with Evidence Code sections 452, 453 and 454.

Since appellant was the one who, by his initial objections, blocked the receipt of the evidence from the other case, and further failed to properly offer the Nardi affidavit specifically, he cannot now be heard to complain. If error, it was invited by appellant and he may not profit therefrom. (*Estate of Witlin* (1978) 83 Cal.App.3d 167, 175 [147 Cal.Rptr. 723]; *Watenpaugh* v. *State Teachers' Retirement* (1959) 51 Cal.2d 675, 680 [336 P.2d 165].)

Even if the Nardi affidavit had been considered by the court, the result would be the same. It discloses minimal contacts by MIB consultants with California. The affidavit explains that MIB's rules require that a member insurance company may not use information obtained from MIB to deny insurance, but only as an alert for the insurance company's own further investigation. It then explains that MIB has a company visit program whereby independent consultants visit each MIB member once every two years. The consultant reviews about 20 files to make sure that members are complying with the MIB rule. A typical visit lasts four to five hours. The consultants do not visit every insurance company with offices in California, but rather only those 52 companies with home offices or branch underwriting offices in California. The visitation program involves one MIB consultant spending approximately 100 hours a year visiting companies in California. Such facts would not support exercising jurisdiction over MIB. First of all, it is not alleged that any act done by the MIB consultant during the course of any California visits has anything to do with the case in chief. Such isolated activities are not sufficient to justify asserting personal jurisdiction. Visits to California by a company president were not sufficient to assert personal jurisdiction in *Kourkene* v. *American BBR,*

*Inc.* (9th Cir. 1963) 313 F.2d 769. A publishing company doing national business was not subject to suit in California simply because its president attended annual publishing conventions or similar meetings in California. (*Frederick Fell, Inc.* v. *Superior Court, supra*, 36 Cal.App. 3d 93, 96.)

These visits by the MIB consultant were mentioned in *MIB, Inc.* v. *Superior Court* (1980) 106 Cal.App.3d 228, 235 [164 Cal.Rptr. 828], and were not considered significant. In *MIB, Inc.* v. *Superior Court, supra*, a writ of mandate was issued ordering service of process quashed on *MIB*. Although the plaintiff in that case was different than the plaintiff in this case, and therefore the doctrines of res judicata or collateral estoppel cannot be applied, the petitioner there and the respondent here are the same and the jurisdictional facts with respect to the method of operation of the respondent are the same.

The order granting the motion to quash service of process is affirmed.

Compton, Acting P. J., and Beach, J., concurred.