[No. B020502. Second Dist., Div. Two. Nov. 12, 1987.]

LAURA FELIX, as Administrator, etc., Plaintiff and Appellant, v. BOMORO KOMMANDITGESELLSCHAFT, Defendant and Respondent.

COUNSEL

Greene, O'Reilly, Broillet, Paul, Simon, McMillan, Wheeler & Rosenberg Christine Spagnoli, Michael J. Goldberg and Jean Pellagatti for Plaintiff and Appellant.

Herzfeld & Rubin, Gary S. Yates and Seymour W. Croft for Defendant and Respondent.

OPINION

COMPTON, Acting P. J.—Plaintiff Laura Felix, as administrator of the estate of Rene Alexander Felix (Felix), appeals from an order quashing service of summons on defendant Bomoro Kommanditgesellschaft (Bomoro), a West German corporation, for lack of personal jurisdiction. We affirm.

In September 1982, Rene Felix (decedent), then 19 years old, was injured in an automobile collision on a section of the Pacific Coast Highway in Santa Monica, California while riding as a passenger in a 1965 Volkswagen

Squareback. This action was subsequently brought against Bomoro, among others,[1] based on an alleged design defect in a door latch assembly which apparently caused decedent to be thrown from the vehicle during the accident. After being served with the complaint, Bomoro appeared specially and moved to quash service of summons on the ground that it lacked the requisite minimum contacts with California to justify the state's assertion of personal jurisdiction. (See Code Civ. Proc., § 418.10.)

In support of its motion to quash, Bomoro submitted the affidavit of Ernst Nockemann, its former chief engineer and director of development, who had been employed by the company from 1927 to 1973 and presently serves as a consultant. The affidavit essentially stated that Bomoro operates under the authority of the Federal Republic of Germany, where its principal offices are located, that it employs approximately 840 persons, and engages in the manufacturing and selling of automobile door latch mechanisms to various carmakers. The corporation has no property, offices, employees, agents, or bank accounts in California. It does not purchase or sell goods in the state and neither solicits business nor advertises in California. The vehicle in which decedent was riding at the time of the accident was manufactured in West Germany by Volkswagen in April 1965, and is known in the industry as a model Type III.

At the commencement of sales in 1962 of the door latch assembly for the Type III, Bomoro was informed by Volkswagen that all such vehicles were to be marketed and sold in Europe and not in the United States. Based upon that representation Bomoro "did not know and could not reasonably have expected or anticipated that its products assembled by Volkswagen into the Model Type III vehicles . . . would find their way to California."

In opposition to the motion to quash, Felix submitted the deposition and trial testimony of Mr. Nockemann from two earlier and unrelated cases in which he appeared as an expert witness for Volkswagen. In both instances Nockemann stated that he first designed the latch used in the manufacture of the Type III in 1960, but that it was not actually produced until 1962. Known as a "rotary ratchet" door latch that incorporated a longitudinal

---

[1] We have been informed by the parties that Rene Felix died sometime during the pendency of this appeal. The administrator of his estate (and former guardian ad litem), Laura Felix, has been substituted as plaintiff and appellant in these proceedings pursuant to rule 48(a) of the California Rules of Court.

The other named defendants include, inter alia, Volkswagenwerk Aktiengesellschaft (VWAG), the manufacturer of the vehicle in which decedent was riding, and Volkswagen of America (VWOA), the importer of Volkswagen automobiles into this country. Plaintiff Felix also sued the City of Santa Monica, the County of Los Angeles, and the driver of the other car involved in the accident. All of these parties remain defendants in the action pending below.

interlocking restraint feature,[2] the mechanism was designed in accordance with safety standards promulgated in the United States because of the importance of the American marketplace. Since 1950, Bomoro has designed and supplied all door latches used on Volkswagen vehicles wherever sold.

Other evidence introduced by Felix established that although VWOA did not commence importing Type III vehicles from Germany to this country for retail sale until the 1966 model year, an undetermined number of newly manufactured 1965 automobiles were purchased in Europe by unauthorized dealers and others for eventual shipment to and use in the United States.[3] Felix also submitted the declaration of his attorney which claimed that individual latches bearing the Bomoro name could be purchased from local Volkswagen dealers.

Based upon the foregoing, the trial court granted the motion to quash service of process and dismissed the complaint against Bomoro, finding that Felix had failed to carry his burden of establishing sufficient contacts between the foreign corporation and California to warrant the exercise of personal jurisdiction.[4] This appeal follows.

■ It has long been settled that where a defendant properly moves to quash out-of-state service of process for lack of jurisdiction, the burden of proof is upon the plaintiff to establish the facts of jurisdiction by a preponderance of the evidence. (*Szabo* v. *Medical Information Bureau* (1981) 127 Cal.App.3d 51, 53 [179 Cal.Rptr. 368]; *Frederick Fell, Inc.* v. *Superior*

---

[2] Although Nockemann originally designed the longitudinal interlocking restraint door latch in 1932, and sold it to several major automobile manufacturers prior to 1950, Volkswagen did not commission use of the device until 1960.

[3] Beginning in late 1965, VWOA imported and sold in excess of 4,723 1966-model-year Type III vehicles to authorized distributors who in turn sold their inventory to authorized dealerships doing business throughout the United States. Approximately the same number of such automobiles were sold on the retail market. No figures exist as to the number of 1965 vehicles sold in Europe and later shipped to individuals or independent dealers in this country. Orders for the 1965 Type III automobiles delivered to purchasers in Europe were not placed directly with VWOA, but rather were made by consumers through authorized dealerships, who also would receive payment for such vehicles. Both orders and monies were forwarded to VWOA for subsequent transfer to VWGA. In answer to interrogatories propounded by Felix, Volkswagen also admitted that it was aware of the existence of unauthorized importers who arranged for the purchase, sale and shipment of cars manufactured for the European market to the United States.

[4] The trial court's minute order states in pertinent part: "The fact that Bomoro parts are on automobiles sold in California and are available as replacement parts in stores in California, is not sufficient to establish that the contacts in California are sufficiently wide ranging, systematic and continuous as to subject Bomoro to California jurisdiction.

"Further, no evidence was presented as to how Bomoro's products reached the California market or the extent of activity here.

"Further, there is no evidence that the particular door latch and vehicle in question in this case (a 1965 Type 3 model) reached California other than fortuitously."

*Court* (1973) 36 Cal.App.3d 93, 95 [111 Cal.Rptr. 219]; *Arnesen v. Raymond Lee Organization, Inc.* (1973) 31 Cal.App.3d 991, 994 [107 Cal.Rptr. 744].) Where there is a conflict in the evidence, the findings of the trial court will not be disturbed on appeal if supported by substantial evidence. (*Kroopf v. Guffey* (1986) 183 Cal.App.3d 1351, 1356 [228 Cal.Rptr. 807]; *Vibration Isolation Products, Inc.* v. *American Nat. Rubber Co.* (1972) 23 Cal.App.3d 480, 482 [100 Cal.Rptr. 269].) In the case at bench, however, the determinative facts are not in dispute and the question of whether defendant is subject to personal jurisdiction is one of law.[5] (*Cosper v. Smith & Wesson Arms Co.* (1959) 53 Cal.2d 77, 81-82 [346 P.2d 409]; *Circus Circus Hotels, Inc.* v. *Superior Court* (1981) 120 Cal.App.3d 546, 555-556 [174 Cal.Rptr. 885]; *Long* v. *Mishicot Modern Dairy, Inc.* (1967) 252 Cal.App.2d 425, 427-428 [60 Cal.Rptr. 432].)

■ Code of Civil Procedure section 410.10 provides that California courts may exercise jurisdiction over nonresidents on any basis not inconsistent with the federal or state Constitutions. This statute manifests an intent to exercise the broadest possible jurisdiction, limited only by constitutional considerations. (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322]; *Rice Growers Assn.* v. *First National Bank* (1985) 167 Cal.App.3d 559, 567 [214 Cal.Rptr. 468]; *Circus Circus Hotels, Inc.* v. *Superior Court, supra,* 120 Cal.App.3d at p. 557.) In a line of cases beginning with *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057], the United States Supreme Court has defined the parameters of the states' power to compel nonresidents to defend suits brought in state courts. As a general constitutional principle, a court may exercise personal jurisdiction over a nonresident defendant as long as the defendant has such minimum contacts with the forum that the maintenance of the suit does not offend " 'traditional notions of fair play and substantial justice.' " (*Internat. Shoe Co.* v. *Washington, supra,* 326 U.S. at p. 316 [90 L.Ed. at p. 102].) In determining whether a particular exercise of jurisdiction is consistent with due process, "the inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.' [Citation.]" (*Rush* v. *Savchuk* (1980) 444 U.S. 320, 327 [62 L.Ed.2d 516, 524, 100 S.Ct. 571].)

■ If a nonresident corporation's activities are sufficiently wide ranging, systematic and continuous, it may be subject to jurisdiction within the

---

[5] The parties in their respective briefs debate at considerable length the degree to which the trial court resolved any conflict in the evidence. Even a cursory review of the record makes it clear that the material facts were not in dispute during the hearing and that the court was confronted solely with a question of law. The vast majority of the evidence submitted in conjunction with the motion to quash was based on the affidavit and prior testimony of Ernst Nockemann. As such, neither Felix nor defendant contested the truth or accuracy of his statements, but merely argued their legal significance in relation to the issue of personal jurisdiction.

state on all causes of action asserted against it. In such circumstances the specific cause of action need not be related to the defendant's business activities within the state. (*Internat. Shoe Co.* v. *Washington, supra,* 326 U.S. at p. 318 [90 L.Ed. at p. 103]; *Secrest Machine Corp.* v. *Superior Court* (1983) 33 Cal.3d 664, 669 [190 Cal.Rptr. 175, 660 P.2d 399]; *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264].) Less extensive activity, however, may support jurisdiction for purposes of a particular cause of action depending upon the nature and quality of the acts, the degree of relation to the asserted cause of action, and the balance between the convenience of the parties and the interest of the state in asserting jurisdiction. (*Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 899 [80 Cal.Rptr. 113, 458 P.2d 57]; see also *Secrest Machine Corp.* v. *Superior Court, supra,* 33 Cal.3d at p. 669.) ■ California recognizes that a state may exercise jurisdiction over one who causes effects in the state by an act or omission done elsewhere with respect to causes of action arising from the effects. This is so unless the nature of the effects and of the individual's relationship to the state make exercise of jurisdiction unreasonable. (*Secrest Machine Corp.* v. *Superior Court, supra,* 33 Cal.3d at p. 669; *Sibley* v. *Superior Court, supra,* 16 Cal.3d 442, 446; see also Jud. Council com., Deerings Ann. Code Civ. Proc., § 410.10 (1972 ed.) p. 667.)

In the more than 40 years since *Internat. Shoe* was decided, the minimum contacts standard has been "substantially relaxed." (*World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286, 292 [62 L.Ed.2d 490, 498, 100 S.Ct. 559].) These changes have come about in large part because of the fundamental transformation of our national economy over the years. "Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." (*McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 222-223 [2 L.Ed.2d 223, 226, 78 S.Ct. 199].) Although modern technology has served to shrink the commercial world in which we live, both in a national and international context, the liberalization of the minimum contacts standard has not continued unabated. ■ In instances where jurisdiction is based on the defendant's occasional activities, the United States Supreme Court has made it clear that there must be some act by which the defendant *purposefully avails* itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. (*Hanson* v. *Denckla* (1958) 357 U.S. 235, 253 [2 L.Ed.2d 1283, 1297-1298, 78 S.Ct. 1228].) To what extent, however, must a foreign corporation purposefully

avail itself of conducting business within the forum before jurisdiction will attach?

Some 20 years after the *Hanson* decision, the Supreme Court applied the "purposefully avails" standard to an action for products liability. In *World-Wide Volkswagen, supra,* 444 U.S. 286, the court specifically rejected the assertion that a consumer's unilateral act of bringing the defendant's product into the forum state was a sufficient constitutional basis for personal jurisdiction over a nonresident corporation. The plaintiffs in that case sued the manufacturer, importer, regional distributor, and retailer of a car purchased in New York for damages arising out of an automobile accident that occurred in Oklahoma. The regional distributor and retail dealer, both incorporated and doing business in New York, challenged the court's exercise of jurisdiction, contending that they had no contacts with the forum state. The plaintiffs argued that the two defendants should be amenable to suit in Oklahoma because it was foreseeable that an automobile purchased in New York would cause injury in Oklahoma. The court rejected these arguments, reasoning that a seller of chattels cannot be deemed to have appointed the chattel as his agent for service of process and that his amenability to suit does not travel with the chattel. The court did note, however, that foreseeability is not irrelevant to the determination of minimum contacts. "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (*Id.* at p. 297 [62 L.Ed.2d at p. 501].)

The court in *World-Wide Volkswagen* reasoned that when a defendant's conduct is such that he " 'purposefully avails [himself] of the privilege of conducting activities within the forum State,' " he is put on notice that he can be sued in the state. (*Id.* at p. 297 [62 L.Ed.2d at p. 501].) He can "alleviate the risk" by buying insurance, passing the potential litigation costs on to his customers, or curtailing his activities in the forum state. (*Ibid.*) Thus, "if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. *The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."* (*Id.* at pp. 297-298 [62 L.Ed.2d at pp. 501-502]; italics added.)

In the case at bench, both parties rely on *World-Wide Volkswagen* to support their respective positions. Felix argues that the stream of commerce doctrine was authoritatively validated by the high court and applies to Bomoro as a manufacturer of component parts. Defendant contends, however, that there is no basis for jurisdiction in California other than the slight foreseeability that its product would enter the state and that such foreseeability is insufficient to establish jurisdiction under the principles articulated by the Supreme Court.

Felix correctly points out that many courts have relied on *World-Wide Volkswagen* as providing justification for the exercise of jurisdiction over a foreign corporation based on no more than the act of placing a product in the stream of commerce. (See e.g. *Nelson by Carson* v. *Park Industries, Inc.* (7th Cir. 1983) 717 F.2d 1120; *Rockwell Intern. Corp.* v. *Costruzioni Aeronautiche* (E.D.Pa. 1982) 553 F.Supp. 328; *Volkswagenwerk, A.G.* v. *Klippan, GmbH* (Alaska 1980) 611 P.2d 498.) Other courts, however, have held that a nonresident's mere awareness that the component it manufactures or sells outside the forum state will reach the forum in the stream of commerce is insufficient to establish jurisdiction under the due process clause. (See e.g. *Humble* v. *Toyota Motor Co., Ltd.* (8th Cir. 1984) 727 F.2d 709; *DeJames* v. *Magnificence Carriers, Inc.* (3d Cir. 1981) 654 F.2d 280; *Ins. Co. of North America* v. *Marina Salina Cruz* (9th Cir. 1981) 649 F.2d 1266.) Although the Supreme Court has attempted to resolve the issue, it has yet to provide an authoritative answer. In *Asahi Metal Industry Co., Ltd.* v. *Superior Court* (1987) 480 U.S. 102 [94 L.Ed.2d 92, 108 S.Ct. 1026], four justices, led by Justice O'Connor, were of the view that placing a product in the stream of commerce with awareness of its ultimate destination is not enough to satisfy the minimum contacts standard. Four other justices opined that jurisdiction may be upheld as against any participant in the manufacture and distribution process who is aware that the final product will be brought into the forum state.

In *Asahi,* a Japanese supplier sold tire valves to a Taiwanese manufacturer, knowing that the valves would be assembled there into tires destined for sale in this country. Approximately 20 percent of such sales were made in California. The plaintiff suffered injury from a defective valve and filed suit in this state against the manufacturer. The manufacturer then cross-complained against the supplier for equitable indemnity. Although on these facts the court could not agree on the application of the stream of commerce rationale, it did conclude that California's exercise of jurisdiction did not comport with "fair play and substantial justice" and thus was unreasonable.

Based upon our reading of the pertinent cases relied on by both parties, we are of the opinion that the strictures of the due process clause

forbid a court from exercising personal jurisdiction over a foreign corporation that merely places its products into the stream of commerce even though it may foresee that those products will ultimately wind their way into the forum state. While not wholly irrelevant, foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Fourteenth Amendment. (*World-Wide Volkswagen, supra,* 444 U.S. 286, 295 [62 L.Ed.2d 490, 500].) In today's rapidly shrinking commercial world with its increasing emphasis on integrated and interdependent goods, it is of course possible for a foreign manufacturer of component parts to reasonably expect that the stream of distribution will carry its products into each of the 50 states and, indeed, around the world. The "contact" proximately resulting from such a commonly held expectation, however, fails to create a substantial connection between the defendant corporation and the forum state. (See *Burger King Corp.* v. *Rudzewicz* (1985) 471 U.S. 462, 475 [85 L.Ed.2d 528, 542, 105 S.Ct. 2174]; *McGee* v. *International Life Insurance Co., supra,* 355 U.S. 220, 223 [2 L.Ed.2d 223, 226].) If the due process analysis were concerned merely with territoriality, the presence of the defendant's product in the forum would be enough to justify the exercise of jurisdiction. The Supreme Court made it apparent in *World-Wide Volkswagen,* however, that fairness requires something more. Individuals and corporations alike must be given fair notice about which activities will make them amenable to suit in a state forum. If foreseeability alone were the criterion, sellers of goods would confront widened bases of personal jurisdiction inconsistent with principles of fair play and substantial justice. "[A] local California tire retailer could be forced to defend in Pennsylvania when a blowout occurs there [citation]; a Wisconsin seller of a defective automobile jack could be haled before a distant court for damage caused in New Jersey [citation]; or a Florida soft-drink concessionaire could be summoned to Alaska to account for injuries happening there [citation]." (*World-Wide Volkswagen, supra,* 444 U.S. 286, 296 [62 L.Ed.2d 490, 500].) The foreseeability that is critical to the constitutional analysis is not the mere likelihood that a product will find its way into any particular state, but that the defendant's conduct and connection with the forum are such that he should reasonably anticipate being sued there. (*Id.* at p. 297 [62 L.Ed.2d at p. 501].)

As with any standard that requires a determination of reasonableness, the minimum contacts test is not susceptible of mechanical application. No bright line may be drawn between instances in which there are sufficient contacts between the forum and the nonresident defendant and those in which there are not. We believe, however, that the degree to which a foreign corporation interjects itself into the forum state directly affects the fairness of subjecting it to jurisdiction. The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise. (See *Ins. Co. of North America* v. *Marina Salina Cruz, supra,* 649

F.2d 1266, 1271.) Under this approach our focus is not limited to a determination of whether a nonresident corporation may foresee that its products will enter any particular state. "Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." (*Asahi Metal Industry Co.* v. *Superior Court, supra,* 480 U.S. 102 [94 L.Ed.2d 92, 104].) Although these examples are by no means exhaustive of the ways in which a plaintiff may establish minimum contacts, they do serve to emphasize that a foreign corporation must knowingly avail itself of the benefits accruing from its activities within the forum before jurisdiction will attach.

■ Applying these principles to the instant case, we can only conclude that it would be manifestly unjust to require Bomoro to defend itself against Felix's suit in this state. Defendant is incorporated in West Germany and is not licensed to do business, nor has it done business in California at any time relevant to this case. Defendant has no office, affiliate, subsidiary, agent, employee, bank accounts, or business operations in this state. The only possible contacts that Bomoro could be said to have with California are by way of the fact that Volkswagen sells automobiles here, containing parts designed and manufactured in Germany by defendant. The vehicles themselves, however, are manufactured in Europe and the component parts are designed by Bomoro according to Volkswagen's specifications. The finished product is, of course, sold and distributed by Volkswagen, not Bomoro.

Although defendant claims that it never anticipated that the 1965 model Type III would be marketed, sold, or distributed in the United States, we do not doubt that the corporation could have foreseen that its product would find its way into the United States and California. Felix, however, has failed to present any facts which establish a substantial connection between Bomoro and this state.[6] Defendant has not advertised, solicited any business, or otherwise sought to serve any particular market in this state. While there is some indication in the record that parts bearing the Bomoro name may currently be purchased by consumers through authorized Volkswagen dealerships, that fact alone is insufficient to justify the exercise of jurisdiction where the cause of action bears no relationship whatsoever to such sales.

---

[6]Despite what the facts may tell us about the Type III in general, the record fails to disclose how the vehicle in which decedent was riding at the time of the accident reached California. We have no clue as to whether that particular auto was purchased here or how long it has been present in the state. We also lack any knowledge as to how many similar vehicles, if any, are registered in California.

(See *Helicopteros Nacionales De Colombia* v. *Hall* (1984) 466 U.S. 408, 417-418 [80 L.Ed.2d 404, 412-413, 104 S.Ct. 1868]; *Rosenberg & Co.* v. *Curtis Brown Co.* (1923) 260 U.S. 516, 518 [67 L.Ed. 372, 375, 43 S.Ct. 170].) We think it clear that the extent to which Bomoro could reasonably anticipate being involved in litigation in California was minimal at best.

To recapitulate, we do not think that whether Bomoro knew that its products would somehow reach California is determinative of the jurisdictional question. The appropriate test is not knowledge or awareness of the ultimate destination of the product, but whether the manufacturer has purposefully engaged in forum activities so it can reasonably expect to be haled into court there, and, even then, the minimum requirements of "fair play and substantial justice" may defeat jurisdiction. The contacts in this case are simply too fortuitous and tenuous to warrant the exercise of personal jurisdiction over Bomoro.

Having determined that defendant's contacts with California are insufficient to justify jurisdiction, we need not undertake the additional process of balancing the inconvenience of defending the action in this state against the interests of plaintiff in suing locally and of the state in assuming jurisdiction. (See *Cornelison* v. *Chaney, supra,* 16 Cal.3d 143, 150-151.)

The judgment (order of dismissal) is affirmed.

Gates, J., and Fukuto, J., concurred.

A petition for a rehearing was denied December 11, 1987, and appellant's petition for review by the Supreme Court was denied February 18, 1988.