[No. A071842. First Dist., Div. Two. Nov. 26, 1996.]

AS YOU SOW, Plaintiff and Appellant, v.
CRAWFORD LABORATORIES, INC., Defendant and Respondent.

## COUNSEL

Chanler & Somers, Clifford A. Chanler, Mark Todres and Jenny Cohn for Plaintiff and Appellant.

Bartko, Zankel, Tarrant & Miller, Richard T. Tarrant and Christopher D. Sullivan for Defendant and Respondent.

## OPINION

**LAMBDEN, J.**—As You Sow (AYS), a nonprofit organization, appeals the trial court's order quashing service of summons over Crawford Laboratories, Inc. (Crawford) for lack of personal jurisdiction. Crawford shipped some of its products to a General Services Administration (G.S.A.) depot in Stockton, California pursuant to an out-of-state contract. G.S.A. determined the final destination of Crawford's products but Crawford knew some products would remain in California. We must decide whether Crawford's contacts with California were sufficient to provide the trial court with general jurisdiction. If too tenuous for general jurisdiction, were Crawford's direct sales to private distributors in California on 16 separate occasions over a period of 6 years sufficient for limited jurisdiction?

We find Crawford's contacts with California failed to provide the trial court with general jurisdiction but did furnish California with limited jurisdiction over Crawford so as not to offend the due process clause. Accordingly, we reverse.

### BACKGROUND

AYS, a nonprofit organization, investigates and sometimes prosecutes possible Proposition 65[1] (California's Safe Drinking Water and Toxic Enforcement Act of 1986) violations.[2] Health and Safety Code section 25249.6[3] requires a warning for products containing hazardous materials.

Crawford, an Illinois company, manufactures paint and related products. According to AYS's investigation, the products Crawford manufactured and

---

[1]Health and Safety Code section 25249.5 et seq., which became effective January 1, 1987, codifies Proposition 65.

[2]Proposition 65 provided for citizen enforcement of the statute. Health and Safety Code section 25249.7, subdivision (d), states: "Actions pursuant to this section may be brought by any person in the public interest if (1) the action is commenced more than sixty days after the person has given notice of the violation which is the subject of the action to the Attorney General and the district attorney and any city attorney in whose jurisdiction the violation is alleged to occur and to the alleged violator, and (2) neither the Attorney General nor any district attorney nor any city attorney or prosecutor has commenced and is diligently prosecuting an action against such violation."

[3]Health and Safety Code section 25249.6 states, in part: "No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual . . . ."

sold to G.S.A. and private distributors in California contained materials listed pursuant to Proposition 65 as carcinogens and/or reproductive toxins.[4] These products, AYS asserts, did not comply with the warning requirements of Proposition 65. AYS notified the various public enforcement agents and Crawford pursuant to Health and Safety Code section 25249.7, subdivision (d), of its intent to sue.

On January 24, 1995, AYS filed a complaint against Crawford alleging violations of Proposition 65 and Business and Professions Code section 17200 et seq. (Unfair Trade Practices Act). Crawford filed a motion to quash service of summons asserting California had no personal jurisdiction over it. The court granted two continuances for AYS to conduct discovery.

Discovery established Crawford had made 16 individual sales to private California distributors between the years 1988 and 1994. According to Ben Schmetterer, president of Crawford, sales to private customers in California never amounted to more than 1 percent of Crawford's annual sales.[5] The gross sales for each of these years were as follows:

| Year | Sales in California | Worldwide Sales |
| --- | --- | --- |
| 1988 | $ 731 | $ 4,851,790 |
| 1989 | 8,964 | 3,797,956 |
| 1990 | 696 | 3,201,289 |
| 1991 | 1,615 | 4,045,243 |
| 1992 | 1,649 | 4,285,819 |
| 1993 | 5,447 | 6,072,890 |
| 1994 | 1,285 | 5,589,171 |

According to Schmetterer's declaration, Crawford has never (1) maintained an office or warehouse in California; (2) been licensed or registered to do business in California; (3) had an agent for service of process in California; (4) maintained a mailing address or phone number in California; (5)

[4] AYS alleges the products manufactured by Crawford contained methylene chloride, toluene, benzene, tetrachloroethylene, lead and lead compounds, hexavalent chromium compounds, and toluene diiscoyanate. Pursuant to Proposition 65 these chemicals required a warning of being a carcinogen or reproductive toxin.

[5] For 1989, the year with the greatest sales to a California distributor, the sales amounted to less than .3 of 1 percent of Crawford's annual sales.

owned any real property or personal property in California; (6) had employees in California for business related activities; (7) held a meeting in California; or (8) maintained a bank account or paid taxes in California.[6]

In addition to its sales to private customers, Crawford sold its products to G.S.A. and shipped some of its products to the G.S.A. depot in Stockton, California.[7] Crawford paid shipping costs, maintained risk of loss, and retained legal title until the goods arrived; but independent shipping companies carried the products to the G.S.A. in accord with the G.S.A.'s directions.[8] Once the Stockton depot received Crawford's products, the G.S.A. decided where to send them and arranged for their delivery by independent shipping companies.[9] Products shipped to California either remained in California or went to 16 different western states and Pacific overseas locations.[10]

All contract negotiations with G.S.A. occurred outside of California. Crawford entered into the contract with G.S.A. in Auburn, Washington, and negotiations occurred among individuals in Auburn and Chicago, Illinois.[11] The contract required Crawford to send its invoices to the G.S.A. in Kansas City, Missouri, and the Kansas City office sent all payments. Crawford stated it never communicated with anyone at the Stockton depot.

The trial court heard the motion to quash service of summons on July 13, 1995. At the hearing, the court stated: "There's some just inherent unfairness with the concept, and that's what bothers me. I'm not saying there might not be some technical argument you might have on your side, but for a company to do—as I recall the number—$700 dollars a year to $7,000 a year business in California, a company that's doing $3 million to $6 million nationwide, outside of the government agency thing, of course, they're exempt from the statute—I just think it's unfair . . . ." When counsel for AYS argued one contact was sufficient for limited jurisdiction the court responded, "Oh, I think technically you may have an argument."

---

[6]AYS claims Crawford did serve the California marketplace through a local distributor and a promotional brochure containing a product list and three distinct messages for potential California purchasers. Crawford disputes this and asserts, even if true, each event happened after AYS filed this lawsuit.

[7]The purchase orders specified whether Crawford would ship the product to Palmetto, Georgia; Fort Worth, Texas; Burlington, New Jersey; or Stockton, California.

[8]AYS requested we take judicial notice of the shipping agreements. Since AYS did not present these facts to the trial judge, we will not consider them. "[W]e are not permitted on appeal to consider evidence not before the trial court. [Citation.]" (*Arnesen* v. *Raymond Lee Organization, Inc.* (1973) 31 Cal.App.3d 991, 995 [107 Cal.Rptr. 744].)

[9]The trial court found G.S.A. had no control over who ultimately received the product.

[10]AYS claims between 50 to 90 percent of the products shipped to Stockton remained in California.

[11]The laws of the United States, Federal Acquisition Regulations governed the contract.

Just before granting the motion to quash, the court concluded: "I think your [counsel for AYS] argument was very persuasive and probably technically correct and probably at an appellate level, they'll buy it a hundred percent, but I still think in the fairness on the facts of this case, you should not bring a foreign corporation into California to do what you're attempting to do. Substantial sanctions. I mean, they're asking Crawford Labs to be subjected to substantial sanctions for very a [*sic*] minuscule amount of business.

"I just don't think it's fair. I just don't think it's fair. Technically parts of your argument might be correct. I'll let somebody else decide that."

### DISCUSSION

AYS contends the trial court erred in quashing service of summons because Crawford's business contacts in California satisfied the requirements for both general and limited jurisdiction. Crawford responds the proper standard of review is abuse of discretion, but, under either standard of review, the court properly granted its motion to quash. For the reasons set forth below, we apply de novo review and find Crawford's contacts with California inadequate for general jurisdiction but sufficient for limited jurisdiction.

### I. *Standard of Review*

■ Once a defendant moves to quash out-of-state service of process for lack of jurisdiction, the plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. (*Felix* v. *Bomoro Kommanditgesellschaft* (1987) 196 Cal.App.3d 106, 110 [241 Cal.Rptr. 670, 69 A.L.R.4th 1] (*Felix*).) When the evidence conflicts, we review the trial court for abuse of discretion. (*Id.* at p. 111.) When the parties do not dispute the facts, we review the issue of jurisdiction de novo. (*Ibid.*)

The *determinative* facts in this case are not disputed.[12] We, therefore, review de novo the legal significance of the undisputed facts.

### II. *Jurisdiction*

■ Under Code of Civil Procedure section 410.10, a California court "may exercise jurisdiction on any basis not inconsistent" with the federal or

---

[12]AYS claims the facts are not in dispute while Crawford cites numerous disputed facts. We, however, base our finding of limited jurisdiction solely on the facts presented by Crawford.

state Constitutions. A state may constitutionally exercise personal jurisdiction over a nonresident defendant when the defendant "purposefully established 'minimum contacts' in the forum State." (*Burger King Corp.* v. *Rudzewicz* (1985) 471 U.S. 462, 474 [85 L.Ed.2d 528, 542, 105 S.Ct. 2174].) Additionally, the defendant's contacts with the forum must make it reasonable for the person to "anticipate being haled into court there" (*World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286, 297 [62 L.Ed.2d 490, 501, 100 S.Ct. 559]) so it " 'does not offend "traditional notions of fair play and substantial justice." ' " (*Id.* at p. 292 [62 L.Ed.2d at p. 498], citing *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 101-102, 66 S.Ct. 154, 161 A.L.R. 1057].)

A state has general jurisdiction over a nonresident defendant for all causes of action if the defendant's activities within the state are " 'extensive or wide-ranging' " or " 'substantial . . . continuous and systematic.' " (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264].) The issue of jurisdiction depends on the particular facts of each case and cannot be decided by applying a mechanical test or a precise formula. (*Id.* at p. 150.)

Less extensive activity may not support general jurisdiction, but may justify limited jurisdiction for the "purposes of a particular cause of action depending upon the nature and quality of the acts, the degree of relation to the asserted cause of action, and the balance between the convenience of the parties and the interest of the state in asserting jurisdiction. [Citations.]" (*Secrest Machine Corp.* v. *Superior Court* (1983) 33 Cal.3d 664, 669 [190 Cal.Rptr. 175, 660 P.2d 399] (*Secrest*).) "In cases where jurisdiction is based on the defendant's occasional activities the United States Supreme Court has said that '. . . it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " (*Id.* at p. 669, citing *Hanson* v. *Denckla* (1958) 357 U.S. 235, 253 [2 L.Ed.2d 1283, 1298, 78 S.Ct. 1228].)

AYS argues the trial court incorrectly discounted the sales to the G.S.A. when considering its jurisdiction over Crawford.[13] The sales and delivery to the Stockton depot, AYS contends, represented substantial, continuous, and systematic activity in California. Furthermore, even if the court correctly disregarded the G.S.A. sales, AYS claims the sales to private distributors provided California courts with limited jurisdiction.

---

[13]AYS contends the trial court incorrectly applied the "military contractor exemption." (See *Boyle* v. *United Technologies Corp.* (1988) 487 U.S. 500, 512 [101 L.Ed.2d 442, 457-458, 108 S.Ct. 2510] [military contractors are exempt from tort liability relating to defective military equipment].)

## A. *Crawford's Sales to G.S.A. Are Insufficient for General Jurisdiction*

AYS argues Crawford delivered 77,149 product units to G.S.A. over the course of four years, yielding more than $6,343,700 in revenue. AYS states, "[b]ecause both title and possession of the products pass from Crawford to the G.S.A. in California, all of Crawford's 'sales' to the Stockton G.S.A. are California sales."[14]

When legal title actually passed is not the critical inquiry for a minimum contacts analysis.[15] For general jurisdiction, we are concerned with the quality and quantity of Crawford's business contacts in California. All negotiations, communications, billing, and payments occurred with a federal entity outside of California. The G.S.A. could have delivered all of its products outside of California since the G.S.A. determined the ultimate destination of the products. As Crawford argues, the unilateral activities of the G.S.A. cannot provide California with jurisdiction over Crawford. (*Pennsylvania Health & Life Ins. Guaranty Assn.* v. *Superior Court* (1994) 22 Cal.App.4th 477, 487 [27 Cal.Rptr.2d 507].)

Crawford analogizes its contract with the G.S.A. to the stream of commerce cases. In both situations, the contracting party knows the product will enter California's borders, but does not engage in "purposeful" activity sufficient to satisfy the due process clause. In *Felix, supra*, the court held California had no jurisdiction over a West German company producing parts for Volkswagen according to Volkswagen's specifications simply because it could foresee the automobile's presence in California. (196 Cal.App.3d 106, 115.) Similarly, in this case, Crawford shipped its products to one of four depots and, though it knew some of its products would remain in California, it had no control over the products' final destination.

---

[14] AYS states the California Uniform Commercial Code section 2106, subdivision (1), defines a "sale" as a contract between a seller and a buyer in which the seller "in consideration of the payment or promise of payment of a certain price in money, transfers to the latter the title and the possession of property." However, Crawford responds, the same code section includes the definition for a "contract of sale" as "both a present sale of goods and a contract to sell goods at a future time." (Cal. U. Com. Code, § 2106, subd. (1).) As explained in footnote 15, legal title no longer has significant relevance to the state's relationship to the contract.

[15] Witkin lists the factors related to deciding which state has the most significant relationship to a contract and the list does not contain legal title. Rather, "[i]n determining the state of most significant relationship, the following contacts are important: (1) the place of contracting [citation]; (2) the place of negotiation of the contract [citation]; (3) the place of performance [citation]; (4) the location of the subject matter of the contract [citation]; and (5) the domicile, residence, nationality, place of incorporation and places of business of the parties [citation]." (1 Witkin, Summary of Cal. Law (9th ed. 1987) § 42, p. 82.) The performance of the contract occurred on federal land, and California had no significant relationship to the contract based on the other listed criteria.

We find the G.S.A. sales did not involve systematic and continuous contacts with California. Merely knowing the product will enter California, without having some control over its ultimate destination, does not satisfy the due process clause of the United States Constitution. The critical focus is "the degree to which a foreign corporation interjects itself into the forum state" and purposefully avails itself of the benefits of the forum state. (*Felix, supra*, 196 Cal.App.3d 106, 115-116.) No evidence showed Crawford intended to serve a market in California with the products it shipped to the G.S.A.[16]

We now consider whether California has limited jurisdiction arising from Crawford's sales to private distributors.

**B. *Crawford's Sales to Private Distributors Are Sufficient for Limited Jurisdiction***

 AYS contends, even if the G.S.A. sales do not provide sufficient contacts, Crawford's sales to private distributors established limited jurisdiction. For limited jurisdiction, "[t]he crucial inquiry concerns the character of defendant's activity in the forum, whether the cause of action arises out of or has a substantial connection with that activity, and upon the balancing of the convenience of the parties and the interests of the state in assuming jurisdiction. [Citations.]" (*Cornelison* v. *Chaney, supra*, 16 Cal.3d 143, 148.)

### 1. *Crawford's activity*

 The trial court acknowledged Crawford made 16 individual sales to independent distributors in California between 1988 and 1994, but found this activity to be so insubstantial it would be unfair to subject Crawford to jurisdiction in California. The court conceded AYS may have presented a "technical argument" for limited jurisdiction, but the court believed it was unfair to subject Crawford "to substantial sanctions" for "a minuscule amount of business."

The court erred when it found jurisdiction to be unfair based on comparing Crawford's sales in California with its worldwide market. For limited jurisdiction, the court must focus on the nature and quality of the activity in the forum state, not the quantity. (See *Floyd J. Harkness Co.* v. *Amezcua*

---

[16]We find the sales to G.S.A. provided an insufficient connection between California and Crawford. We, therefore, do not need to determine whether the trial court excluded these sales when making its decision and whether such an exclusion was proper when deciding jurisdiction.

(1976) 60 Cal.App.3d 687, 693 [131 Cal.Rptr. 667].) Otherwise, states would be unable to provide their injured citizens with redress against large companies because the sales in any one state would represent a small fraction of the company's total revenue.

▉ Instead of focusing on the quantity of activity, we must look to see if the defendant purposefully availed itself of the benefits and protections of California law to make it reasonably foreseeable to be "haled into the court in the forum State" to defend itself in an action relating to its products. (*World-Wide Volkswagen Corp.* v. *Woodson, supra,* 444 U.S. 286, 297 [62 L.Ed.2d 490, 501].) When a manufacturer makes a direct effort to serve the market for its product in the forum state, the requisite level of foreseeability is met. (*Secrest, supra,* 33 Cal.3d 664, 670.) Indeed, in *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 222 [2 L.Ed.2d 223, 225-226, 78 S.Ct. 199], the United States Supreme Court found California had jurisdiction over a Texas insurance company though "so far as the record before us shows, respondent has never solicited or done any insurance business in California apart from the policy involved here." Similarly, in *Secrest,* the court found one sale in California sufficient for limited jurisdiction because the defendant specifically sold the product "for use in California." (*Secrest, supra,* 33 Cal.3d at p. 670.)

▉ ▉ Crawford contends foreseeability alone is insufficient for jurisdiction and its sales to private customers were too scattered to satisfy the due process requirements.[17] However, "[a]n enterprise obtains the benefits and protection of our laws if as a matter of commercial reality it has engaged in economic activity within this state . . . . [Citation.]" (*Sklar* v. *Princess Properties International, Ltd.* (1987) 194 Cal.App.3d 1202, 1208 [240 Cal.Rptr. 102], citing, *Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d 893, 901.) "[J]urisdiction based on an isolated use or purchase [is] precluded only if the isolated nature of the use 'conclusively establishes lack of foreseeability that the product will enter the state.' [Citation.]" (*Secrest, supra,* 33 Cal.3d 664, 670.) The defendant must show the placement of the single product occurred in a manner not so fortuitous and unforeseeable as to

[17]Crawford also asserts that *Secrest, supra,* 33 Cal.3d 664; *McGee* v. *International Life Ins. Co., supra,* 355 U.S. 220; and *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893 [80 Cal.Rptr. 113, 458 P.2d 57] no longer represent good law given *World-Wide Volkswagen Corp.* v. *Woodson, supra,* 444 U.S. 286; *Asahi Metal Industry Co.* v. *Superior Court* (1987) 480 U.S. 102, 109 [94 L.Ed.2d 92, 102-103, 107 S.Ct. 1026] (mere awareness product will enter forum state is insufficient for general jurisdiction); *Felix, supra,* 196 Cal.App.3d 106, 114; and *Alexander* v. *Heater* (1987) 193 Cal.App.3d 1241 [238 Cal.Rptr. 795]. These latter decisions, however, only impact the former cases in that they hold foreseeability, by itself, does not provide sufficient contact for general jurisdiction. *Secrest* and the other cases are not inconsistent with these latter decisions to the extent they hold one direct sale with a party in the forum state satisfies limited jurisdiction.

demonstrate its placement here was not purposeful. (See *Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d at p. 902.)

Although Crawford did not send any employees to California to negotiate the contracts, it does not deny contracting directly with private distributors located in California. Thus, unlike its contracts with the G.S.A., Crawford purposefully consummated business arrangements with California companies on 16 separate occasions so it could profit from the products' use in California. Such contact constituted economic activity within California " 'as a matter of commercial actuality.' " (*See Secrest, supra,* 33 Cal.3d 664, 669.)

### 2. *The allegations relate to Crawford's activity in California*

The complaint for injunctive relief and civil penalties alleged Crawford sold products containing Proposition 65-listed chemicals in California and failed to provide adequate warnings. Thus, the allegations in the complaint directly related to Crawford's activity in California.

### 3. *California has an interest in assuming jurisdiction*

■ We next balance the fairness and reasonableness of subjecting Crawford to jurisdiction in California by the state's interest in assuming jurisdiction. We weigh the following factors: "[T]he relative availability of evidence and the burden of defense and prosecution in one place rather than another; the interest of a state in providing a forum for its residents or regulating the business involved; the ease of access to an alternative forum; the avoidance of a multiplicity of suits and conflicting adjudications; and the extent to which the cause of action arose out of defendant's local activities."[18] (*Cornelison* v. *Chaney, supra,* 16 Cal.3d 143, 151.)

■ The evidence supporting and refuting AYS's claims and the experts needed to testify regarding the possible carcinogens or reproductive toxins in Crawford's products should not be especially tied to California or Illinois. Neither AYS nor Crawford discusses the location of the evidence, but it should be relatively easy to transport both the evidence and experts to the court with jurisdiction. Crawford is located in Illinois, but it does business worldwide and its gross sales indicate defending a lawsuit here would not result in significant economic hardship.

A more significant factor when assessing reasonableness and fairness in this case is California's interest in this lawsuit. California voters specifically passed a statute to regulate products containing hazardous materials, thereby

---

[18] We have already considered this factor in the discussion above.

exhibiting an exceptional interest in regulating the subject matter of this lawsuit. (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 448 [128 Cal.Rptr. 34, 546 P.2d 322]; see also *Quattrone* v. *Superior Court* (1975) 44 Cal.App.3d 296, 306-307 [118 Cal.Rptr. 548] [court found jurisdiction over a defendant who allegedly violated a special California regulation designed to protect shareholders of California corporations].)

Crawford claims California has minimal interest because this case does not involve an "injured" party; instead, the plaintiff is a nonprofit organization acting as a "private attorney general." Such an argument, however, discounts the objective of Proposition 65. The initiative sought to provide California consumers with the appropriate warnings so they could avoid future physical injuries, since ailments resulting from exposure to carcinogens or reproductive toxins may take many years to surface. As AYS argues, selling and shipping toxic products without warnings "injured" citizens of California within the meaning of Proposition 65.

California is the most appropriate forum for this lawsuit. Illinois should have little interest in determining whether sales in California violated a California statute. Moreover, having California rather than Illinois courts interpret Proposition 65 should reduce the likelihood of conflicting adjudications.

After balancing the foregoing factors, we find the relationship among Crawford, California, and this cause of action justifies the exercise of limited jurisdiction by a California court over Crawford.

CONCLUSION

We find Crawford's contacts with California arising from its contracts with the G.S.A. and shipments to the G.S.A. depot in Stockton too attenuated to support general jurisdiction. We hold Crawford's direct sales to private distributors in California do provide California courts with limited jurisdiction over Crawford consistent with the United States and California Constitutions. Accordingly, we reverse.

Kline, P. J., and Haerle, J., concurred.

On December 13, 1996, the opinion was modified to read as printed above.