[No. D006429. Fourth Dist., Div. One. Sept. 19, 1988.]

THOMAS A. BRUNS et al., Plaintiffs and Appellants, v.
DESOTO OPERATING COMPANY, INC., et al., Defendants and
Respondents.

## COUNSEL

Steven M. Green and Bart Barringer for Plaintiffs and Appellants.

Lewis, D'Amato, Brisbois & Bisgaard and Peter L. Garchie for Defendants and Respondents.

## OPINION

**WORK, J.**—After a Texas corporation, DeSoto Operating Company, Inc. (DeSoto), and its alleged alter ego, O. B. Haley, assumed certain agreements to operate Texas gas and oil investment properties from Keystone Oil Company, Inc. (Keystone), another Texas corporation, it was sued by 33 California investors (Investors) whose contractual agreements had been obtained by Keystone in a California securities solicitation. Although all agreements were executed in California in transactions subject to the judicial processes of this state, Investors' suit against DeSoto and O. B. Haley for rescission of the contracts it assumed from Keystone, for securities violations and various tort causes of action in connection with the solicitation of and performance of the terms of the agreements, was dismissed after the court granted motions to quash summons because it found insufficient California contacts for personal jurisdiction. Because we conclude a successor who assumes contractual obligations and benefits of an entity subject to the judicial process of a particular forum may not divest other contracting parties of the jurisdictional benefits obtained from the circumstances in which the contract was formed, we reverse the order of dismissal.[1]

---

[1] The Investors further assert the court erred by not allowing their attorney the full amount of time he requested and needed to argue the necessary contacts. Because of our disposition on the merits, we do not address this contention.

## Factual and Procedural Background

This case involves a dispute over the sale and operation of the Investors' fractional percentage of seven oil and gas leases located in Texas. The leases were initially sold to the Investors by Keystone. All preliminary negotiations and contracts for the leases were consummated by Keystone and its officers L. D. Haley, Gerald Ledbetter and others. L. D. Haley resides in Texas and is the president and majority shareholder of Keystone. Ledbetter was a resident of San Diego County when the transactions with the Investors took place. Keystone, L. D. Haley and Ledbetter prepared prospectuses and model form operating agreements for the purpose of selling oil .and gas leases to the Investors.

Beginning about December 1981, Keystone, L. D. Haley and Ledbetter contacted the Investors in California to induce them to invest in oil and gas leases. In California, they made personal visits, held large meetings of potential investors and used the mail and telephone to solicit investments.

In 1983, Keystone sold its production in various oil wells, including the seven oil and gas leases, to DeSoto, also a Texas corporation doing business in Texas. O. B. Haley, L. D. Haley's brother and a Texas resident, is president of DeSoto. (DeSoto and Keystone were incorporated the same week by the same lawyer.)

DeSoto's first contact with the Investors occurred after the sale and involved correspondence concerning the leases. The Investors were informed of DeSoto's ownership in a letter dated May 6, 1983. Subsequent correspondence from DeSoto informed the Investors of the status of their fractional interest in the leases, billed them for current operating expenses and threatened to sue for unpaid billings unless Investors paid or assigned their interests to DeSoto.

When the Investors sued in California, DeSoto and Haley challenged personal jurisdiction by moving to quash service of summons. DeSoto filed various exhibits and the declarations of Haley stating neither own property in California, have no employees and do not operate in California. In opposition, the Investors submitted voluminous exhibits arguing that DeSoto and its alter ego subjected themselves to the jurisdiction of the California courts when they assumed Investors' contracts.

At the hearing, the trial court stressed the physical oil and gas assets were in Texas when DeSoto assumed them and concluded DeSoto's postassumption letters and statements to the California Investors were insufficient to

establish the required minimum contacts for exercising personal jurisdiction.

## SCOPE OF REVIEW

■ The applicable standard of review of a motion to quash was set forth in *Arnesen* v. *Raymond Lee Organization, Inc.* (1973) 31 Cal.App.3d 991, 994-995 [107 Cal.Rptr. 744], as follows: "We test [the] record in light of the principles that: (1) where a defendant properly moves to quash out of state service of process for lack of jurisdiction, the burden of proof is upon the plaintiff to establish the facts of jurisdiction by a preponderance of the evidence [citations]; (2) evidence of those facts or their absence may be in the form of declarations . . . [citations]; (3) where there is a conflict in the declarations, resolution of the conflict by the trial court will not be disturbed on appeal if the determination of that court is supported by substantial evidence [citations]." (See also *Alexander* v. *Heater* (1987) 193 Cal.App.3d 1241, 1245-1246 [238 Cal.Rptr. 795]; *Kroopf* v. *Guffey* (1986) 183 Cal.App.3d 1351, 1356 [228 Cal.Rptr. 807].)

" ' "[S]ubstantial evidence" ' is not ' " 'deemed synonymous with "any" evidence[,]' " ' but rather ' "of ponderable legal significance, . . . reasonable in nature, credible, and of solid value." ' " (*Kroopf* v. *Guffey, supra,* 183 Cal.App.3d at p. 1356, quoting from *Bowers* v. *Bernards* (1984) 150 Cal.App.3d 870, 873 [197 Cal.Rptr. 925].)

## DISCUSSION

■, ■ ■ California may exercise jurisdiction on any basis not inconsistent with the Constitution of California or of the United States. (Code Civ. Proc., § 410.10.) The law defining the limits of state court jurisdiction over nonresident defendants begins with *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057], setting out the rule that the forum state may not exercise jurisdiction over a nonresident absent a relationship to the state such as to make the exercise of such jurisdiction reasonable.

"California law recognizes two ways in which the constitutional 'minimum contacts' requirement [citation] may be satisfied. In some cases, the nonresident defendant's contacts with the forum state may be so 'extensive or wide-ranging' [citation] as to justify jurisdiction even for purposes unrelated to the defendant's contacts. [Citations.] In other cases, however, where the defendant's contacts are more limited, due process demands he only be subjected to the jurisdiction of the forum state where the litigation

arises out of his activities in that state. [Citations.]" (*Safe-Lab, Inc.* v. *Weinberger* (1987) 193 Cal.App.3d 1050, 1053 [238 Cal.Rptr. 712].)

We are concerned only with whether California may assert jurisdiction over DeSoto for the limited purpose of this lawsuit. The California contacts relied on by the Investors arise from DeSoto's and its alleged alter ego assuming their operating agreement contracts from Keystone and L. D. Haley. Substantial evidence shows Keystone and L. D. Haley entered into contracts for the sale and operation of the oil and gas leases with the Investors in the State of California; L. D. Haley traveled to California to solicit investments, to deliver documents and to collect money from the Investors; and L. D. Haley and Keystone had a California resident agent to solicit investments, distribute prospectuses, collect money and generally oversee the securities transactions. It is undisputed California could exercise personal jurisdiction over Keystone and L. D. Haley as to controversies arising from these contracts for the sale of the oil and gas leases.

DeSoto and its alter ego, O. B. Haley, took over the assets, liabilities and the operation of the leases the Investors had invested in from Keystone and L. D. Haley in a "transfer of assets and operations" sometime in 1983. In a letter to the Investors dated May 6, 1983, DeSoto and Haley assumed, affirmed and ratified the operating agreements between Keystone and the Investors and informed the Investors of the takeover of the operating agreement.

DeSoto and Haley cannot assume the benefits of the contract between Keystone and the Investors without assuming the obligations. California Civil Code section 1589 states: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." A maxim of jurisprudence states, "[h]e who takes the benefit must bear the burden." (Civ. Code, § 3521.) Moreover, "[a]n assignment carries with it all rights of the assignor [citations]; and, where it is clearly the intent of the parties, as manifested by their conduct in the instant matter, the assignee succeeds to the obligations of the contract. [Citations.]" *Foreman Roofing Inc.* v. *United Union of Roofers etc. Workers* (1983) 144 Cal.App.3d 99, 107 [192 Cal.Rptr. 439].)

"[W]here the cause of action arises out of economic activity within the state, the contacts need not consist of repeated or continuous business transactions; an isolated transaction, such as the breach of a contract made and to be performed in the state, may be sufficient." (*Martin* v. *Detroit Lions, Inc.* (1973) 32 Cal.App.3d 472, 475 [108 Cal.Rptr. 23].)

DeSoto assumed the operating agreement contracts for the purpose of deriving an economic benefit from California-created contractual obligations of California residents. "[A]n act which is done outside the state with the intention of causing effects in California or where it could reasonably be expected that effects in California would result may invoke jurisdiction. For example, if the defendant sought or anticipated economic benefit in California from its out-of-state activities [citation], the limitations of *Sibley* have been held not to apply." (*Farris* v. *Captain J. B. Fronapfel Co.* (1986) 182 Cal.App.3d 982, 990 [227 Cal.Rptr. 619].) The requests for money sent to the Investors by DeSoto and Haley show they sought and anticipated economic benefits in California.

In *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, the court held that it is sufficient for the purposes of due process that the suit was based on a contract which had substantial connection with that state. In *McGee,* as here, the defendant was a Texas corporation claiming to have no offices or agents in California, had never solicited or done business in California except with the party in the lawsuit, and had assumed the contract from another corporation. The court, however, held that since the contract was delivered in California, the premiums were mailed from California and the insured was a resident of California when he died, California had a manifest interest in providing effective means of redress for its residents when the insurers refuse to pay claims. Further, the court held that residents of California would be severely disadvantaged if they must follow the insurance company to a distant state to hold it legally accountable.

This court has stated, "[w]here the cause of action asserted against the defendant is based on a contract, the making and performance of that contract in California will be sufficient to sustain jurisdiction even if the defendant has no other California contacts." (*Safe-Lab, Inc.* v. *Weinberger, supra,* 193 Cal.App.3d at pp. 1053-1054.)

In *Asahi Metal Industry Co.* v. *Superior Court* (1987) 480 U.S. 102 [94 L.Ed.2d 92, 107 S.Ct. 1026], the court emphasized the "substantial connection" between the defendant and the forum state must be purposefully directed toward the forum state. DeSoto's and Haley's assumption of the contract between Keystone, L. D. Haley and the Investors satisfies this test.

Moreover, California has a strong interest in providing a forum for the Investors. The contract which DeSoto assumed from Keystone was entered into in California. The alleged breach of the contract will continue to affect these California Investors. The California Supreme Court has repeatedly emphasized this state and its residents and taxpayers have a substantial interest in providing a forum where residents may seek whatever redress is

due them. (*Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 899, 906 [80 Cal.Rptr. 113, 458 P.2d 57]; *Fisher Governor Co.* v. *Superior Court* (1959) 53 Cal.2d 222, 225 [1 Cal.Rptr. 1, 347 P.2d 1].) If mere assumption of obligations subject to the judicial supervision in California may render this state powerless to protect its citizens who have entered into contracts in reliance of California's mantle of jurisdiction, then assumption by out-of-state entities may be employed solely to create an economic disincentive to disadvantage persons who contracted with reasonable expectations they may litigate disputes in a forum established by the contract. The need for stability in commercial expectations requires the jurisdictional, as well as the contractual, elements created by a contract attend to it even when one party's interest is assumed by another entity.[2]

The judgment of dismissal and the order quashing summons are reversed. Appellants shall have costs on appeal.

Kremer, P. J., and Benke, J., concurred.

A petition for a rehearing was denied October 11, 1988, and respondents' petition for review by the Supreme Court was denied January 18, 1989.

---

[2]We find interesting, but not dispositive, the Investors' request to take judicial notice of documents submitted showing DeSoto and O. B. Haley have moved to dismiss similar post-judgment lawsuits Investors filed in Texas, on the ground California has paramount jurisdiction.