The HOME INDEMNITY COMPANY, a New Hampshire corporation; Wausau Business Insurance Company, Wausau Underwriters Insurance Company, and Employers Insurance of Wausau, a Mutual Company, Wisconsin corporations; and California Insurance Company, a California corporation, Plaintiffs,

v.

STIMSON LUMBER COMPANY, an Oregon corporation; National Surety Corporation, an Illinois corporation; Northwestern Pacific Indemnity Company, an Oregon corporation; American National Fire Insurance Company, a New York corporation; American Home Assurance Company, a New York corporation; the Insurance Company of the State of Pennsylvania, a Pennsylvania corporation; and National Union Pittsburgh, a Pennsylvania corporation, Defendants.

Stimson Lumber Company, an Oregon corporation, Third–Party Plaintiff,

v.

The California Insurance Guaranty Association, an unincorporated association; the Colorado Insurance Guaranty Association, an unincorporated association; the Hawaii Insurance Guaranty Assocation, an unincorpo-

rated association; the Idaho Insurance Guaranty Association, an unincorporated association, the Oregon Insurance Guaranty Association, an unincorporated association; the Utah Property and Casualty Association, an unincorporated association; and the Washington Insurance Guaranty Association, an unincorporated association, Third–Party Defendants.

No. CV 01–514–HA.

United States District Court,
E.D. New York.

Sept. 30, 2003.

**1224**

Dianne K. Dailey, Bullivant Houser Bailey Pendergrass & Hoffman, Portland, OR, for Plaintiff.

## OPINION AND ORDER

HAGGERTY, District Judge.

This case was filed in April 2001 by the Home Indemnity Company, *et al.*, naming numerous defendants, including Stimson Lumber Company. In July 2003, Stimson filed a third-party claim against several insurance guaranty associations. In August 2003, the insurance guaranty associations filed motions to dismiss for lack of personal jurisdiction (Docs.# 151, 154, 159, 162, 166). The Utah Property and Casualty Insurance Guarantee Association filed a motion to dismiss for lack of personal jurisdiction and improper venue (Doc. # 183). The Oregon Insurance Guaranty Association filed a motion to stay proceedings (Doc. # 170).

### BACKGROUND

Plaintiffs issued contracts of primary liability insurance to Stimson. The other named defendants (the excess insurers) issued contracts of excess liability insurance to Stimson. Plaintiffs sought a declaration of plaintiffs' obligations to Stimson in connection with Stimson's claims for insurance coverage under the insurance contracts. Plaintiffs additionally sought a declaration of the excess insurers' obligations to Stimson and to plaintiffs with regard to payment of any damages under the insurance contracts.

Plaintiffs, the excess insurers, and other insurers provided liability insurance to Stimson from 1980 to the present. Stimson manufacturers wood products, including an exterior hardboard siding product known as Forestex. In plaintiffs' complaint, plaintiffs allege that Stimson manufactured siding from 1986 until June 1997 at its plant in Oregon. Stimson sold these products throughout the western United States. Since the early 1990s, Stimson has been named as a defendant in lawsuits alleging that defects in Stimson's Forestex

siding caused property damage to the siding and to other property into which the siding had been incorporated.

Stimson notified plaintiffs and most of the excess insurers of various suits and claims against Stimson arising out of the use of the siding. Stimson maintains that the insurers are contractually obligated to defend or indemnify Stimson in connection with all siding claims. Plaintiffs agreed to defend Stimson as to certain of those claims, subject to a reservation of rights. Stimson contends that plaintiffs are obligated to defend or indemnify it more broadly than plaintiffs have agreed to. The excess insurers provided certain excess liability insurance to Stimson, and that excess liability insurance may be reached as a result of the payment of sums by or on behalf of Stimson in connection with the siding claims.

On June 13, 2003, The Home Indemnity Company (The Home), an original plaintiff to this action, was ordered liquidated with a finding of insolvency by the Superior Court of New Hampshire. Following the order of liquidation, Magistrate Judge Hubel issued an order requesting that Stimson join the relevant guaranty associations as third-party defendants. These nonprofit guaranty associations were created by the legislature of various states to cover the outstanding liabilities of insolvent insurers. To determine which associations to join, Stimson identified the associations with respect to which it decided it has covered claims. Washington, California, Colorado, Idaho, Hawaii, Utah and Oregon were all named as third-party defendants.

Prior to the commencement of this lawsuit, plaintiffs accepted Stimson's tenders of defense and indemnity of numerous siding claims. Plaintiffs have defended over thirty siding claims tendered to them and contributed all or most of the sums paid to resolve the claims pursuant to the terms and conditions of the policies. However, as to one of the siding claims, *Boulders on the River, Inc. v. Stimson Lumber Co.,* Stimson incurred costs and expenses in excess of· $150,000 that were otherwise covered by the plaintiffs' and third-party defendants' policies. Stimson requested that plaintiffs fulfill their indemnity obligations by paying these costs and expenses. Plaintiffs ignored Stimson's request and Stimson was forced to pay the costs and expenses with its own funds. Stimson seeks reimbursement from plaintiffs of these costs and expenses. To the extent not reimbursed by plaintiffs, Stimson seeks reimbursement from the third-party defendants of these costs and expenses. As of March 2003, there were approximately twenty siding claims pending, most of them in California.

### STANDARDS

Pursuant to Fed.R.Civ.P. 12(b)(2), an action may be dismissed if the court lacks personal jurisdiction. Stimson bears the burden in this case of establishing that this court has personal jurisdiction over Washington, California, Colorado, Idaho, Utah, and Hawaii (collectively the associations). *See Fireman's Fund Ins. Co. v. Nat'l Bank of Coop.,* 103 F.3d 888, 893 (9th Cir.1996) (nonmoving party has burden of establishing personal jurisdiction).

■ Personal jurisdiction over a nonresident defendant is tested under a two-prong analysis: the exercise of jurisdiction must (1) satisfy the requirements of the long arm statute of the state in which the district court sits; and (2) comport with principles of federal due process. *Terracom v. Valley Nat. Bank,* 49 F.3d 555, 559 (9th Cir.1995); *Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir.1995).

■ The due process clause of the United States Constitution protects persons from being subject to the binding judgments of a forum with which they

have established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *Int'l Shoe Co. v. State of Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Jurisdiction is proper only where the defendant's conduct and connection with the forum state are such that the defendant should reasonably anticipate being brought into court in the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). If the defendant's conduct and connection with the forum state are such that the defendant should not reasonably anticipate being brought into court in the forum state, dismissal as to that defendant is appropriate.

■ Personal jurisdiction may be either "general" or "specific." *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir.1990). For a defendant to be subject to general personal jurisdiction, defendant must have such "continuous and systematic contacts with the forum that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Reebok Intern. Ltd. v. McLaughlin,* 49 F.3d 1387, 1391 (9th Cir.1995).

Where the defendant's contacts with the forum are not continuous and systematic, the forum may exercise only specific personal jurisdiction. Specific personal jurisdiction is determined by the following three-prong test:

(1) The nonresident defendant must purposefully direct activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Core–Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1485 (9th Cir.1993).

■ In a diversity action, the federal court may exercise jurisdiction over a nonresident defendant if jurisdiction is proper under the law of the state where the action was filed and if jurisdiction comports with federal constitutional due process principles. *See Fireman's Fund Ins. Co.,* 103 F.3d at 893. Accordingly, for Stimson to establish personal jurisdiction over the associations, it must demonstrate that Oregon's long arm statute confers personal jurisdiction over the associations and that exercise of jurisdiction does not violate federal constitutional principles of due process. *Triangle Fabricators, Inc. v. Forward Indus., Inc.,* 866 F.Supp. 467, 470 (D.Or.1994) (citing *Gray & Co. v. Firstenberg Mach. Co., Inc.,* 913 F.2d 758, 760 (9th Cir.1990)).

Oregon's long arm statute is fairly comprehensive, including granting jurisdiction in any case where prosecution is not inconsistent with the Oregon Constitution or the United States Constitution. *See* ORCP 4. The test for this "catch-all" section of the long arm statute was addressed by the Oregon Supreme Court in *State ex rel. Circus Circus Reno, Inc. v. Pope,* 317 Or. 151, 159–60, 854 P.2d 461 (1993). In *State ex rel Circus Circus Reno,* the court said that minimum contacts will be found where the defendant has purposefully directed its activities at residents of the forum state and where the litigation arises out of or relates to those activities. However, even if minimum contacts are established, the exercise of personal jurisdiction must be

reasonable and comport with "fair play and substantial justice."

### ANALYSIS OF THIRD–PARTY DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

■ Each of the association's motion to dismiss for lack of personal jurisdiction is similar. Therefore, the following analysis applies to each association. The associations assert that the court should grant the motions to dismiss because it does not have *in personam* jurisdiction or jurisdiction of its property. The associations are not residents of Oregon and do not maintain a registered agent for service of process in Oregon. The associations have not engaged in business in Oregon, do not maintain a place of business in Oregon and have no employees, servants, or officers within the state. The associations are not insurance companies and have never contracted to insure any person, property, or risk located within Oregon. Rather, the purpose of the associations is to pay covered claims arising from the insolvency of its insurers, pursuant to statute.

The associations assert that covered claims are only those unpaid claims within the coverage policies issued by insolvent insurers admitted to transact insurance in the state where the claimant or the insured is a resident of that state. Additionally, the associations are not bound by judgments, settlements or other direct obligations of insolvent insurers, and are not the successors of any of the insolvent insurers identified in Stimson's third-party complaint. The associations do not provide defense or indemnity to Stimson, nor do the associations provide coverage for Oregon claimants or damage to Oregon property.

Other jurisdictions have held that an out-of-state guaranty association such as those alleged in Stimson's third-party complaint do not have sufficient minimum contacts with another state to extend personal jurisdiction to that state's court. *See e.g. Pennsylvania Health and Life Ins. Guar. Ass'n v. Superior Court,* 22 Cal.App.4th 477, 27 Cal.Rptr.2d 507 (Cal.Ct.App.1994); *Georgia Insurers Insolvency Pool v. Brewer,* 602 So.2d 1264 (Fla.1992); *South Carolina Ins. Guar. Ass'n v. Underwood,* 527 So.2d 931 (Fla.Ct.App.1988). These courts have held that out-of-state guaranty associations with similar enabling statutes are independent statutorily created legal entities and do not assume the obligations of an insolvent insurer for jurisdictional purposes. *Pennsylvania Health and Life Ins. Guar. Ass'n,* 22 Cal.App.4th 477, 27 Cal.Rptr.2d 507; *Georgia Insurers Insolvency Pool,* 602 So.2d 1264.

Each of the associations, unlike the insurance company parties, are entities created by their state legislature. They are comprised of all insurers admitted to transact insurance within that state for the types of insurance detailed in the statute. The purpose of the associations are to provide a limited form of protection in the event of an insurer's insolvency. As provided in the enabling statute, the associations are only authorized to pay and discharge statutory covered claims. Covered claims are defined by the statute and include unpaid claims for a loss under an insolvent insurer's policy that must meet statutory requirements. Such requirements provide that the claim is within the coverage of an insurance policy issued by an insolvent insurer that was admitted to transact insurance in the state.

Additionally, there must be a connection between the state and the claimant in order to receive the association's benefits. Therefore, the association's activities and obligations only pertain to those claims under policies of insolvent insurance companies admitted to transact insurance within the state involving resident claim-

ants. Furthermore, nothing in the associations' statutes indicate that the state legislatures intended that the associations be subject to the jurisdiction of foreign courts.

Stimson argues that Oregon's long arm statute applies because ORCP 4L grants jurisdiction for any action against a defendant where prosecution of the action is consistent with constitutional due process. To comport with due process, the minimum contacts test should be applied. Stimson contends that the proper focus of the minimum contacts test should not be on the associations themselves, but on the insolvent insurer (The Home) whose rights and responsibilities they assumed. Stimson asserts that jurisdiction should be exercised because the associations exist to cover the obligations of insurers like The Home and by statute are deemed The Home to the extent of covered claims and are liable to the same extent as The Home. The Home had sufficient minimum contacts with Oregon for personal jurisdiction because it contracted with Stimson, an Oregon resident, to insure a risk in Oregon. Because the associations were created to cover the liabilities of insolvent insurers like The Home, The Home's contacts are imputed to the associations for purposes of personal jurisdiction.

However, other jurisdictions have rejected this argument. In *Pennsylvania,* the California Court of Appeal held that a guaranty association and an insolvent insurer are not "one and the same" for jurisdictional purposes. *Pennsylvania Health and Life Ins. Guar. Ass'n,* 22 Cal. App.4th at 483, 27 Cal.Rptr.2d 507. The court found that the guaranty association did not stand in the shoes of an insolvent insurer, and was not obligated to provide statutory protection to a beneficiary who was not a resident of the association's state. Rather, the association was only statutorily liable to the extent of covered claims and its obligations were not coextensive with those of the insolvent insurer. *Id.* at 485–86, 27 Cal.Rptr.2d 507. Accordingly, because the association itself had no contacts with the insured's state, the court held that the state had no basis for asserting personal jurisdiction over the non-resident guaranty association. *Id.* at 488, 27 Cal.Rptr.2d 507.

Stimson fails to allege specific jurisdictional facts demonstrating that the associations have sufficient contacts with Oregon to infer personal jurisdiction. The associations are not Oregon residents and there are no allegations that the associations are authorized to do business in Oregon, have transacted business in Oregon or have property or risks located within Oregon. Stimson's sole allegation as to jurisdiction pertains to the associations' assumption of rights and responsibilities of The Home.

Following the Oregon Supreme Court's test for conferring jurisdiction under Oregon's long arm statute, the associations do not meet the "minimum contacts" analysis because the associations have not purposefully availed themselves of the privilege of conducting activities in Oregon. The associations did not engage in activity directed at Oregon, but merely engaged in unilateral activity with another party (namely The Home). *See Burger King Corp.* at 475, 105 S.Ct. 2174. To impute The Home's contacts with Oregon to the associations for the purposes of establishing personal jurisdiction would violate the Due Process Clause of the United States Constitution. *See Pennsylvania Health and Life Ins. Guar. Ass'n,* 22 Cal.App.4th 477, 27 Cal. Rptr.2d 507.

In sum, there are no allegations of continuous and systematic contacts between the associations and Oregon, nor are there allegations of minimum contacts substantial enough to exercise personal jurisdiction. Furthermore, to exercise personal

jurisdiction over the defendants would require these non-profit associations to spend substantial sums of money in hiring attorneys in foreign jurisdictions, and the social goal of assisting in-state claimants and insureds would be frustrated by forcing the associations to expend its resources defending in foreign states rather than satisfying covered claims. *See World-Wide Volkswagen Corp.* 444 U.S. at 292, 100 S.Ct. 559 (setting forth the balancing test for determining whether the "fair play and substantial justice" standard is met). Therefore, it does not comport with notions of "fair play and substantial justice" to grant personal jurisdiction over the associations.

## ANALYSIS OF UTAH'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

Contrary to the statutes in the other associational states, Utah's provides that "[t]he courts of the state shall have exclusive jurisdiction over all actions brought against the association that relate to or arise out of this part." Utah Code Ann. § 31A–28–207(4). Utah argues that the other third-party defendants are the guaranty associations or funds for the several western states. Utah is bound by the powers and limitations provided in the statute, which provisions differ from the provisions governing the conduct of the other third-party defendants. Therefore, the Utah state courts are best qualified to interpret those provisions.

However, Article III of the United States Constitution confers power on the federal district courts to hear all cases arising under federal law or between diverse parties. Any state law that would deny this court's jurisdiction runs afoul of the Constitution and is thus ineffective under the Supremacy Clause of Article VI. *See Gross v. Weingarten,* 217 F.3d 208 (4th Cir.2000) (Virginia insurance commission order creating exclusive state forum for claims against insolvent insurer's estate held ineffective where federal district court had diversity jurisdiction). Therefore, Utah's Motion to Dismiss for lack of jurisdiction is analyzed the same as the other associations. As noted above, this court finds that personal jurisdiction is lacking as to all the associations and Utah's Motion to Dismiss for improper venue is moot.

## ANALYSIS OF OREGON'S MOTION TO STAY PROCEEDINGS

The New Hampshire Superior Court liquidation order provides for a six-month stay on all actions and proceedings involving The Home. Oregon asserts that this court should enforce the liquidation order and stay proceedings. However, because this court finds that personal jurisdiction is lacking as to all the associations, Oregon's Motion to Stay Proceedings is denied.[1]

## CONCLUSION

For the foregoing reasons, defendants' Motions to Dismiss for lack of personal jurisdiction (Docs.# 151, 154, 159, 162, 166) are GRANTED. Similarly, Utah's Motion to Dismiss for lack of personal jurisdiction and improper venue (Doc. # 183) is GRANTED in part and DENIED in part. Oregon's Motion to Stay Proceedings (Doc. # 170) is DENIED.

IT IS SO ORDERED.

---

1. Oregon also argues that a stay should be imposed so that it can better prepare a defense. Oregon was served with the summons and complaint on July 14, 2003. Oregon filed its answer with affirmative defenses and counterclaims on August 12, 2003. Through normal discovery, Oregon should have sufficient time to prepare its defense.