**TRIANGLE FABRICATORS, INC., d.b.a. The Trinity Companies, Edgar T. Numrich, Plaintiffs,**

v.

**FORWARD INDUSTRIES, INC., d.b.a. Republic Clear–Thru, Mendel Shemtov, Kasriel (KC) Shemtov, Defendants.**

Civ. No. 94–673–FR.

United States District Court, D. Oregon.

Oct. 28, 1994.

Edgar T. Numrich, pro se.

G. Kevin Kiely, Cable, Huston, Benedict, Haagensen & Ferris, Portland, OR, for defendants.

## OPINION

FRYE, District Judge.

The matter before the court is the motion of the defendants to dismiss for lack of personal jurisdiction (# 11–1) and alternative motion to transfer venue (# 11–2). The defendants also move to dismiss the corporate plaintiff because it is represented by the individual defendant.

## BACKGROUND

On May 10, 1994, the plaintiff, Edgar T. Numrich, filed a *pro se* complaint on behalf of himself and on behalf of the plaintiff, Triangle Fabricators, Inc., d.b.a. The Trinity Companies (Trinity) against the defendant corporation, Forward Industries, Inc., d.b.a. Republic Clear–Thru (Republic), and against the individual defendants, Mendel Shemtov and Kasriel (KC) Shemtov (the Shemtovs), in the Circuit Court of the State of Oregon for the County of Clackamas alleging claims for breach of contract, interference with business relationships, misrepresentation, fraud, and civil racketeering. On May 26, 1994, plaintiff Numrich filed a first amended complaint on behalf of himself and Trinity. On June 15, 1994, the defendants removed the action to this court pursuant to 28 U.S.C. § 1332 on the grounds of diversity of citizenship.

## ALLEGED FACTS

Trinity is an Oregon corporation established by plaintiff Numrich on September 18, 1992 to supply specialty products to Oregon gaming lotteries. Numrich is a resident of Clackamas County, Oregon. Defendant Republic is a New York corporation which manufactures soft vinyl products. Defendants Shemtovs are employees of Republic and residents of Brooklyn, New York.

Republic advertises its merchandise nationally in a supply register available in libraries in the State of Oregon. Advertisements for Republic include a toll-free "800" number.

The plaintiffs first contacted the defendants in July of 1992 to request a price quotation on vinyl products. The defendants responded by sending to the plaintiffs in the State of Oregon prices and specifications on an "accordion wall display" and a heat-sealed, clear vinyl wallet. The defendants also sent a sample to the plaintiffs, which included a clear vinyl wallet with an "OREGON LOTTERY" logo. This sample was produced in the State of New York for a former client of Republic in the State of Oregon.

On or about September 22, 1993, the plaintiffs requested a price quotation by facsimile from the defendants for heat-sealed, vinyl wallets with a one-color, silk-screened logo. The plaintiffs planned to re-sell these wallets to the Oregon State Lottery. The defendants responded to the plaintiffs in the State of Oregon by telephone and supplied a price quotation and product specifications. On October 13, 1993, the plaintiffs placed an order with the defendants for 100,000 vinyl wallets.

Throughout the three-month course of the negotiations, the plaintiffs and the defendants were in contact by telephone, facsimile, and the United States mail regarding the order for the Oregon State Lottery. During this time, the plaintiffs also requested and received from the defendants a price quotation on merchandise for the Washington State Lottery. All examples of correspondence between the plaintiffs and the defendants show that the plaintiffs' address is in the State of Oregon.

By November 18, 1993, the defendants had shipped almost fifty percent of the order to the plaintiffs in the State of Oregon. The first half of the order was prepaid by the plaintiffs. The plaintiffs notified the defen-

dants to cancel the second half of the order because the shipment had been delayed.

The defendants completed production of the order and on January 3, 1994 sought the services of a collection agency in the State of New York. On February 8, 1994, the defendants sought the services of a collection agency in the State of Oregon. On March 25, 1994, the defendants sought the services of a collection agency in the State of New Jersey. On May 14, 1994, the defendants sought the services of the same collection agency in the State of Oregon.

The plaintiffs have submitted the affidavit of Carrie Nault, the owner of a sole proprietorship in Salem, Oregon doing business as Ipsenault Co. (Ipsenault). Nault states in her affidavit that Ipsenault purchased vinyl products from Republic for resale to the Oregon State Lottery on three occasions during the years 1988, 1990 and 1992.

### CONTENTIONS

The defendants contend that the court should dismiss this action pursuant to Fed. R.Civ.P. 12(b)(2) for lack of personal jurisdiction or, in the alternative, transfer venue of this action to the United States District Court for the Southern District of New York. The defendants further contend that this court should dismiss the first amended complaint as to the corporate plaintiff on the grounds that the corporation is being represented by plaintiff Numrich in violation of O.R.S. 9.320.

The plaintiffs contend that the defendants have had the requisite minimum contacts with the State of Oregon to confer limited personal jurisdiction, and that venue in the District of Oregon is proper under 28 U.S.C. § 1391. The plaintiffs further contend that the representation of Trinity by plaintiff Numrich, who is not licensed to practice law in the District of Oregon or anywhere else, is justified because of the economic circumstances of the corporation.

### APPLICABLE LAW—PERSONAL JURISDICTION

■ For the purpose of a motion to dismiss, the complaint is liberally construed in favor of the plaintiffs and its allegations are taken as true. *Newman v. Comprehensive Care Corp.*, 794 F.Supp. 1513, 1517–18 (D.Or. 1992) (citing *Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1332 (9th Cir. 1987)).

■ To establish personal jurisdiction, the plaintiffs must show that the long-arm statute of the State of Oregon confers personal jurisdiction over the out-of-state defendant, and that the exercise of jurisdiction by this court does not violate federal constitutional principles of due process. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir.1990). "Oregon's long-arm statute confers jurisdiction to the extent permitted by due process. *See* Or.R.Civ.P. 4 L." *Id.* (footnote omitted).

■ Due process in the context of specific personal jurisdiction is determined by using a three-part test: "1) the nonresident defendant must have *purposefully availed* himself of the privilege of conducting activities in the forum by some affirmative act or conduct; 2) plaintiff's claim must *arise out of* or result from the defendant's forum-related activities; and 3) exercise of jurisdiction must be *reasonable.*" *Roth v. Garcia Marquez*, 942 F.2d 617, 620–21 (9th Cir.1991) (emphasis in original).

"Once purposeful availment has been established, the forum's exercise of jurisdiction is *presumptively reasonable.* To rebut that presumption, a defendant 'must present a *compelling* case' that the exercise of jurisdiction would, in fact, be unreasonable." *Roth,* 942 F.2d at 625 (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985)).

■ The court considers seven factors to determine whether the exercise of jurisdiction is reasonable: 1) the extent of the defendant's purposeful interjection into the affairs of the forum state; 2) the burden on the defendant; 3) conflicts of law between the forum and the home jurisdiction of the defendant; 4) the interest of the forum in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the interest of the plaintiff in convenient and effective

relief; and 7) the existence of an alternative forum. *See Roth*, 942 F.2d at 623; *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1198–99 (9th Cir.1988).

## ANALYSIS

■ The plaintiffs concede that the elements necessary for the exercise of general jurisdiction are not present in this case. Therefore, this court will only address issues relating to the exercise of special jurisdiction, venue, and Numrich's representation of Trinity.

■ The law of the State of Oregon confers personal jurisdiction to the extent permitted by due process. *Gray*, 913 F.2d at 760. The question then turns on the three-part test of the due process analysis.

First, the plaintiffs must show that the defendants *"purposefully availed* [themselves] of the privilege of conducting activities in the forum by some affirmative act or conduct." *Roth*, 942 F.2d at 620–21 (emphasis in original). Here, the defendants advertised in a national publication, maintained a toll-free number, quoted merchandise prices to the plaintiffs in 1992, negotiated with the plaintiffs in 1993 for the Oregon State Lottery merchandise contract, and quoted merchandise prices to the plaintiffs for the Washington State Lottery in 1993.

The defendants maintain, nonetheless, that their contract with the plaintiffs was a "one-shot deal," *Roth*, 942 F.2d at 622, and that neither party envisioned an ongoing relationship. The defendants rely on *Burger King Corp. v. Rudzewicz* to support their argument that in order for them to be subject to the jurisdiction of this court, they needed to enter into a relationship with the plaintiffs that envisioned "continuing and wide-reaching contacts." 471 U.S. at 480, 105 S.Ct. at 2186.

In *Burger King*, the United States Supreme Court held:

"[T]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" and those products subsequently injure forum consumers.

*Id.* at 473, 105 S.Ct. at 2182 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980)). "[W]ith respect to interstate contractual obligations ... parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950)). "Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.*, 471 U.S. at 475, 105 S.Ct. at 2183 (citations omitted).

Contrary to the assertions of the defendants, the contacts between the plaintiffs and the defendants in this case are not similar to the contacts between the parties in *Gray*, in which the United States Court of Appeals for the Ninth Circuit found that the defendants did not purposefully avail themselves of the benefits and protections of the laws of the State of Oregon. 913 F.2d at 761.

Unlike the defendants in *Gray*, the defendants here had contact with the State of Oregon prior to the transaction at issue and supplied products specifically directed towards the State of Oregon, as illustrated by the "OREGON LOTTERY" logo in Exhibit C to Plaintiffs' [Response] Memorandum in Opposition to Defendants' Motion to Dismiss. The defendants do not deny that they conducted business in the State of Oregon on three different occasions before the contract with the plaintiffs was negotiated. Additionally, the defendants provided the plaintiffs with price quotations for merchandise to be sold to the Washington State Lottery.

Taking the allegations of the plaintiffs as true, such price quotations would be evidence of contemplation of a continuing relationship between the plaintiffs and the defendants. Communications between the plaintiffs and

the defendants were not "single or occasional acts" creating an "attenuated" affiliation with the State of Oregon that do not support the exercise of personal jurisdiction. *Burger King*, 471 U.S. at 475 n. 18, 105 S.Ct. at 2183 n. 18.

In *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the United States Supreme Court used four examples of conduct that indicated that a defendant had purposefully availed itself of the forum state's market. The Supreme Court explained:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.

*Id.* at 112, 107 S.Ct. at 1032.

Here, the defendants designed a product for the market in the State of Oregon, advertised in a national publication, and provided a toll-free number for their customers. The actions of the defendants in this case are sufficient to satisfy the "purposeful availment" requirement of the limited jurisdiction analysis.

The second step of the analysis requires that the claim(s) of the plaintiffs arise out of or result from the forum-related activities of the defendants. *Roth*, 942 F.2d at 621. The defendants do not contest that the claim of the plaintiffs arises out of the 1993 contract to supply vinyl wallets.

■ However, the exercise of jurisdiction must be reasonable. *Id.* Republic does not argue that the exercise of limited personal jurisdiction by this court would be unreasonable under the seven considerations set forth in *Roth*, 942 F.2d at 623. In light of the business dealings that the defendants had with the plaintiffs in the Oregon market, this

court concludes that it is reasonable for this court to exercise jurisdiction over the defendants in this action.

■ The defendants argue that this action should be transferred to the United States District Court for the Southern District of New York. 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The United States Court of Appeals for the Ninth Circuit has determined that the considerations used in a motion for *forum non conveniens* are helpful in deciding a motion for change of venue, noting that "a court must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed").

The plaintiffs brought this action against the defendants in the District of Oregon. Absent a "strong showing of inconvenience" by the defendants, this court will not "upset[ ] the plaintiff's choice of forum." *Decker Coal*, 805 F.2d at 843. Because the defendants have not made such a showing, there is no basis for this court to transfer venue to the Southern District of New York.

■ Finally, the defendants contend that the court should dismiss the first amended complaint as to Trinity on the grounds that the plaintiff corporation is being represented by plaintiff Numrich, who is not licensed to practice law in the State of Oregon, in violation of O.R.S. 9.320.

The right to practice law in the State of Oregon is reserved to active members of the Oregon State Bar Association, with the exception of litigants acting *pro se* under O.R.S. 9.320. O.R.S. 9.160.

O.R.S. 9.320 states, in relevant part: "**Necessity for employment of attorney; effect**

of employment. Any action, suit, or proceeding may be prosecuted or defended by a party in person, or by attorney, except that ... a corporation appears by attorney in all cases, unless otherwise specifically provided by law."

The court concludes that the plaintiff corporation must be represented by an attorney.

## CONCLUSION

The motion of the defendants to dismiss for lack of personal jurisdiction (# 11–1) and alternative motion to transfer venue (# 11–2) are denied. Although plaintiff Numrich is entitled to represent himself *pro se* under O.R.S. 9.320, the plaintiff corporation must obtain counsel within thirty days or be dismissed from this action.